UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00578-FDW-DSC

| | |
|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, ) ) ) Plaintiff, ) ) vs. ) ) NAGLE & ASSOCIATES, P.A. and CARL B. ) NAGLE, ) ) Defendants. ) ) | ORDER |

THIS MATTER is before the Court on the parties' Motions for Summary Judgment (Doc. Nos. 14, 17), wherein the parties move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to grant summary judgment in their favor as to all claims and counterclaims.[1] Also pending before the Court is the parties' Joint Motion to Continue Docket Call/Trial, (Doc. No. 21). For the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is GRANTED IN PART and DISMISSING IN PART. Plaintiff's Motion is Granted to the extent it seeks a declaration regarding the duty to defend under the Policies. Plaintiff's Motion is otherwise Dismissed, in that Plaintiff's claim for a declaration regarding its duty to indemnify is hereby DISMISSED WITHOUT PREJUDICE. Defendants' Motion for Summary Judgment, (Doc. No. 17), is DENIED. The Parties' Joint Motion to Continue Docket Call/ Trial, (Doc. No. 21), is, therefore, DENIED AS MOOT.

---

[1] Defendants failed to timely file a substantive motion in this matter; However, they seek summary judgment in their favor in their response brief. See (Doc. No. 17). Accordingly, the Court construes Defendants' response brief as a Motion for Summary Judgment. Id.

1

## I. BACKGROUND

The relevant material facts in this matter are undisputed. This case arises from an insurance coverage dispute related to a lawsuit accusing certain law firm of knowingly violating the Driver's Privacy Protection Act (the "**DPPA**"), 18 U.S.C. § 2721 *et seq*. "The DPPA . . . bans disclosure, absent a driver's consent, of 'personal information,' *e.g.*, names, addresses, or telephone numbers, as well as 'highly restricted personal information,' *e.g.*, photographs, social security numbers, and medical or disability information." Maracich v. Spears, 570 U.S. 48, 48–49 (2013).

### A. The Parties

Plaintiff Nationwide Mutual Fire Insurance Company is an insurance company organized under the laws of Ohio, with its principal place of business in Ohio. (Doc. No. 1, p. 1). Defendant Nagle & Associates, P.A. is a law firm organized under the laws of North Carolina, with its principal place of business in North Carolina. Id. at 2. Defendant Carl B. Nagle is a citizen and resident of the State of North Carolina. Id.

### B. The Insurance Policies

From April 1, 2012, to April 1, 2021, Plaintiff issued businessowner liability insurance policies to Defendants (collectively, the "**Policies**"). (Doc. No. 1, pp. 3–4). Under Coverage A of the Policies, coverage is provided for those sums that the insured becomes legally obligated to pay as damages for certain "bodily injury" and "property damage" occurring during the policy period that is caused by an "occurrence." Id. at 67. The Policies define "bodily injury" to mean, "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at 84. The Policies define "property damage," in pertinent part, to mean, "[p]hysical

2

injury to tangible property, including all resulting loss of use of that property…" and "[l]oss of use of tangible property that is not physically injured…." (Doc. No. 1-4, p. 87).

The Policies further provide, under Coverage B, coverage for those sums that the insured becomes legally obligated to pay as damages for certain "personal and advertising injury" caused by an offense arising out of the business, provided that the offense was committed during the policy period. (Doc. No. 1-4, p. 74). The Policies define "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your 'advertisement'; or
   g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

(Doc. No. 1-4, p. 86).

The Policies also include a number of exclusions applicable to Coverage A and Coverage B.[2] The Recording and Distribution of Material in Violation of Law exclusion (the "**Exclusion**") precludes coverage, including any duty to defend, for any "personal and advertising injury:"

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

---

[2] The Court recognizes Plaintiff asserts 10 exclusions apply to preclude coverage to Defendants in this matter. Because the Court finds Defendants have failed to meet their burden of bringing themselves into the language of the Policies, and that the Exclusion bars coverage, the Court addresses only one exclusion it finds relevant and applicable to resolving the dispute at hand.

3

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Doc. No. 1-4, p. 76).[3]

The Policies also include the "Exclusion – Violation of Consumer Protection Statutes" Endorsement (form PB 29 98 09 08) (the "**Endorsement**"), which precludes coverage for "personal and advertising injury":

Arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;
(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;
(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or
(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the electronic printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Doc. No. 1-4, p. 107).[4]

---

[3] A similar exclusion applies to the coverage for "bodily injury" and "property damage" in Coverage A. Section I.A.2., Exclusion x. Recording and Distribution of Material or Information in Violation of Law. (Doc. No. 1-4, pp. 73–74).

[4] A similar exclusion applies to the coverage for "bodily injury" and "property damage" in Coverage A. Id.

## C. The Underlying Hatch Suit and the Present Action

The relevant underlying action here, Johnathan Hatch, et al. v. Michael A. DeMayo, et al., Case No. 16-cv-00925 (M.D.N.C.) (the "**Hatch Suit**"), is a putative class action asserting that several defendants, including Defendants (collectively, the "**Hatch Defendants**"), violated the DPPA by accessing the underlying claimants' personal information from certain motor vehicle accident reports, known as DMV-349 forms (the "**DMV-349 forms**"), and using the personal information to send the claimants marketing materials for the Hatch Defendants' legal services. (Doc. No. 1-2, pp. 14, 17).

Claimants Mark Dvorksy and Kelly Epperson (collectively, the "**Claimants**") further allege the Hatch Defendants knew the DMV-349 forms contained personal information from a motor vehicle record, but still "regularly and knowingly" obtained and used the personal information to market their services to Claimants. (Doc. No. 1-2, p. 20). Claimants sought to represent a class of similarly situated claimants, (Doc. No. 1-2, pp. 20–23); However, on August 13, 2020, the Middle District of North Carolina denied their motion for class certification. See Hatch v. DeMayo, 2020 WL 4719632 (M.D.N.C. August 13, 2020). Then, On January 22, 2021, the Middle District of North Carolina issued a memorandum opinion and order finding the Hatch Defendants did not violate the DPPA when they obtained, disclosed, or used the personal information at issue. See Hatch v. DeMayo, 2021 WL 231245 (M.D.N.C. January 22, 2021). Accordingly, the court granted the Motions for Summary Judgment filed by the Hatch Defendants. Id. The Claimants subsequently filed an appeal, and the Hatch appeal is currently pending. Plaintiff has been defending Defendants in the Hatch Suit pursuant to a full reservation of rights, but now seeks a declaration that it owes no insurance coverage obligations to Defendants in

5

Case 3:20-cv-00578-FDW-DSC   Document 23   Filed 03/03/22   Page 5 of 16

connection with the Hatch suit.  (Doc. No. 1; Doc. No. 1-3).

On October 20, 2020, Plaintiff filed their Complaint in the present action.  (Doc. No. 1). On November 23, 2020, Defendants filed their Answer to Plaintiff's Complaint, along with Counterclaims for breach of contract and declaratory relief.  (Doc. No. 7).  Plaintiff now moves for summary judgment, seeking a determination that no defense or indemnity is owed to Defendants in connection with the Hatch Suit, including the pending appeal, and entrance of judgment in its favor on all pending claims and counterclaims.  (Doc. No. 14).  In support of their Motion, Plaintiff asserts the Policies dictate that it has no duty to defend or indemnify Defendants because the allegations in the Hatch Suit do not allege any of the three types of injury covered by the Policies: "bodily injury," "property damage," or "personal and advertising injury." (Doc. No. 15).  Further, Plaintiff argues, even if the allegations in the Hatch Suit were covered by the Policies, Plaintiff still has no duty to defend or indemnify because the allegations fall squarely within the Exclusion.  Id.  Defendants, on the other hand, contend that the Hatch Suit does state a covered claim for "bodily injury," "property damage," and "personal and advertising injury."  (Doc. No. 17).  Defendants further contend that the Policies' exclusions do not apply.  Id.  Neither party contends that a genuine issue of material fact precludes summary judgment; therefore, judgment as a matter of law is appropriate.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The interpretation of an insurance policy, including the extent of the insurer's duty to defend and/or indemnify, is a question of law that is appropriately decided by dispositive motion.  See

6

Harleysville Mut. Ins. Co. v. Packer, 60 F.3d 1116, 1121 (4th Cir. 1995); Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 172 S.E.2d 518, 522 (N.C. 1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000).

### III.   ANALYSIS

#### A. Duty to Defend

Under North Carolina law,[5] "[a]n insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings [of the underlying lawsuit] . . ..  When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable."  Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co., 340 S.E.2d 374, 377 (N.C. 1986); see also Firemen's Ins. Co. of Washington D.C. v. Glen-Tree Invs., LLC, 2012 WL 4191383, at *5 (E.D.N.C. Sept. 19, 2012) ("An insurer has a duty to defend when pleadings allege facts that impose upon an insured a liability covered by the policy."). "When a dispute arises regarding the duty to defend, the insured must initially show that the asserted facts arguably fall within the policy's coverage.  If the insured meets this burden, then the insurer must show that the policy precludes coverage based on an exclusion." Pennsylvania Nat. Mut. Cas. Ins. Co. v. Sharpe Images, Inc., 2012 WL 3962747, at *2 (W.D.N.C. Sept. 11, 2012) (citations omitted).

To decide an insurer's duty to defend, the court compares the allegations of the underlying complaint with the terms of the policy.  Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C., 692 S.E.2d 605, 610 (N.C. 2010) (citations omitted) ("[North Carolina courts] apply the 'comparison test,' reading the policies and the [underlying] complaint 'side-by-side . . . to

---

[5] The parties agree North Carolina substantive law controls this dispute.  See (Doc. Nos. 14, 17); see also 28 U.S.C. § 1332 (2018); Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

7

determine whether the events as alleged are covered or excluded.'"). The Supreme Court of North Carolina has explained, "[i]n addressing the duty to defend, the question is not whether some interpretation of the facts as alleged could possibly bring the injury within the coverage provided by the insurance policy; the question is, assuming the facts as alleged to be true, whether the insurance policy covers that injury." Id. at 611.

### a. Coverage A – "Bodily Injury" and "Property Damage"

Defendants bear the burden of proving that the asserted facts in the Hatch Suit fall within the Policies' coverage. Id. Thus, regarding Coverage A, Defendants must initially prove that the definitions of "bodily injury" and "property damage" are satisfied. Id. Plaintiff contends Defendants cannot meet their burden of proving the allegations set forth in the Hatch suit fall within the definitions of "bodily injury" and "property damage" because the Hatch Suit contains no allegations of bodily injury, sickness, or disease, as required by the Policies' definition of "bodily injury." Additionally, the underlying action contains no allegations of physical injury to or loss of use of tangible property, as required to satisfy the Policies' definition of "property damage."

Defendants' strained response to this issue is a reference to the allegation in the Hatch Suit that the underlying claimants "suffered damage to their respective privacy rights . . . when personal information from a motor vehicle record . . . was obtained, disclosed, or used by Defendants without consent or permission." (Doc. No. 1-2, pp. 24–25). The harm alleged has nothing to do with bodily injury, sickness, disease, or physical injury or loss of use to tangible property, and instead relates solely to the rights protected by the DPPA. Defendants fail to cite any case law

8

supporting the idea that the harm alleged could possibly be interpreted as "bodily injury" or "property damage," likely because none exists.

Based on the foregoing, the Court agrees with Plaintiff that there are no allegations in the Hatch Suit which can be construed as satisfying the definition of either "bodily injury" or "property damage." Indeed, the only claim asserted in the underlying action is for violation of the DPPA. (Doc. No. 1-2). Consequently, the Court finds the relevant language of Coverage A is unambiguous and Plaintiff does not owe a duty to defend under such coverage.

### b. Coverage B – "Personal and Advertising Injury"

Defendants also bear the burden of initially proving that the allegations set forth in the Hatch suit fall within the definition of "personal and advertising injury" in Coverage B of the Policies. Sharpe Images, 2012 WL 3962747, at *2. Similar to Coverage A, Plaintiff also contends Defendants cannot meet their burden of proving that the Policies' definition of "personal and advertising injury" is satisfied by the allegations in the Hatch Suit. (Doc. No. 14, pp. 9–15). The term "personal and advertising injury" in an insurance policy is not ambiguous. Harleysville Mut. Ins. Co., 692 S.E.2d at 614. Coverage for such an injury is only triggered where the underlying allegations against an insured arise out of one of the specifically enumerated offenses set forth in the Policies.[6] Id.

---

[6] Those offenses include: (a) false arrest, detention, imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; (d) oral or written publication, in any manner, of material that slanders or libels a person or an organization or disparages a person's or organization's goods, products, or services; (e) oral or written publication, in any manner, of material that violates a person's right of privacy; (f) the use of another's advertising idea in your "advertisement;" or (g) infringing upon another's copyright, trade dress, or slogan in your "advertisement." See (Doc. No. 1-4, p. 86).

9

Here, the parties' dispute relates only to the following enumerated offense: (e) oral or written publication, in any manner, of material that violates a person's right of privacy ("**Offense E**"). (Doc. No. 1-4, p. 86). In order to fall within Offense E, the underlying complaint must necessarily include a *publication* of material that *violates a right of privacy*. Id. For the reasons set forth below, the allegations set forth in the Hatch suit do not support a violation of a recognized right of privacy under North Carolina law. Therefore, the single cause of action in the Hatch suit, violation of the DPPA, does not fit within one of the offenses enumerated in the Policies' definition of "personal and advertising injury."

Even assuming the publication requirement is satisfied, Defendants claim for coverage under Coverage B for "Personal and Advertising Injury" still fails because the allegations set forth in the Hatch suit do not support a violation of a recognized right of privacy under North Carolina law. Defendants contend that the Hatch Suit should be construed as alleging a claim for violation of the right of privacy because, in their view, the suit states facts which would support a common law claim for violation of the right of privacy. (Doc. No. 17, pp. 8–10). However, the Fourth Circuit has specifically rejected this assertion. See Hartford Cas. Ins. Co. v. Ted A. Greve & Assoc. PA, 742 F. Appx 738, 741 (4th Cir. 2018). Greve involved a coverage dispute in which another law firm was sued for violation of the DPPA. Id. at 739. The insurer in Greve denied coverage based, in part, on an exclusion for personal and advertising injury arising out of the violation of a person's right of privacy created by any state or federal act, unless the liability would have occurred even in the absence of a state or federal statute. Id. In an effort to escape the exclusionary effect of this provision, the law firm in Greve argued that the exception to the

10

exclusion should apply because the firm would have faced liability even in the absence of the DPPA, owing to the potential for common law claims for violation of privacy rights. Id. at 741.

In rejecting the Greve firm's contention, the Fourth Circuit first noted that North Carolina recognizes only two types of invasion-of-privacy torts: (1) intrusion upon a person's seclusion, solitude, or private affairs; and (2) appropriation of a person's name or likeness for commercial advantage. Id. The Fourth Circuit rejected the assertion that the allegations in the underlying complaint could be construed as supporting a claim for intrusion upon seclusion, because the accident reports at issue are public records under North Carolina law. Id. Thus, the law firm's actions "– obtaining information from public records to facilitate the mailing of legal advertisements – may have been unwelcome, but they do not constitute an intrusion upon seclusion under North Carolina law." Id. at 741.

The Fourth Circuit also found that the allegations in the underlying suit did not support the second type of privacy tort—appropriation of likeness. Id. The court noted that "the gravaman of the underlying actions is that the defendants sought to advertise to the plaintiffs, not use the plaintiffs to advertise." Id. Consequently, Greve unequivocally establishes that facts supporting the two recognized common law privacy torts under North Carolina law are *not* alleged in the Hatch Suit.

Based on the Fourth Circuit's analysis in Greve, a duty to defend cannot apply under the Policies absent allegations of publication of material that falls within a tort of invasion of privacy. The claimants in the underlying Hatch Suit have not asserted a claim for invasion of privacy, have not sought damages for invasion of privacy, and have not alleged facts to support a claim for the tort of invasion of privacy. Consequently, the underlying claimants have not alleged any of the

11

torts enumerated in the definition of "personal and advertising injury," and Plaintiff does not owe a duty to defend Defendants for the underlying Hatch Suit.

The Court's conclusions as to the foregoing issues are dispositive of the duty to defend. As Defendants cannot establish that the definitions of "bodily injury," "property damage," or "personal and advertising injury" are satisfied by the underlying allegations, Plaintiff does not owe a duty to defend. Accordingly, Defendants have failed to meet their burden of bringing themselves into the language of either Coverage A or Coverage B of the Policies. See Hartford Cas. Ins. Co. v. Gelshenen, 801 F.Appx. 915, 917 (W.D.N.C. 2020) (citing Kubit v. MAG Mut. Ins. Co., 708 S.E.2d 138, 147 (N.C. Ct. App. 2011). '[T]he insured has the burden of bringing itself within the insuring language of the policy.") Moreover, even if Defendants had established one or more of the key definitions were satisfied, Plaintiff still would not owe a duty to defend because the Exclusion fully bars coverage.

### c. Recording and Distribution of Material in Violation of Law Exclusion

As noted above, Plaintiff bears the burden of proving that any exclusions bar coverage. Sharpe Images, 2012 WL 3962747, at *2. As set forth previously, the Exclusion bars coverage for "any federal . . . statute . . . that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (See, e.g., Doc. 1-4, p. 76).[7] Plaintiff contends that this exclusion completely bars coverage because the Hatch Suit arises out of the DPPA, a federal statute which prohibits or limits the collecting or recording of material or information. (Doc. No. 15, p. 18). Similarly, Plaintiff asserts, if the Hatch Suit is construed as seeking damages for publication of private information,

---

[7] A similar exclusion applies to the coverage for "bodily injury" and "property damage" in Coverage A. (Doc. No. 1-4, p. 73–74).

12

this exclusion would apply because the DPPA is a federal statute which prohibits or limits the dissemination, sending, transmitting, communicating, or distribution of material or information. (Doc. No. 15, p. 18).

Numerous cases applying North Carolina law have found that the language set forth in the Exclusion bars coverage for DPPA claims such as those at issue here. See, e.g., Main Street America Assurance Co. v. Crumley Roberts, LLP, 2021 WL 1195804 (M.D.N.C. March 30, 2021) (holding that a similar exclusion barred coverage for the Hatch DPPA suit); Peerless Ins. Co. v. Law Offices of Jason E. Taylor P.C., 2020 WL 4370941 (M.D.N.C. July 8, 2020) (holding that a similar exclusion barred coverage for another DPPA suit); Hartford Cas. Ins. Co. v. Gelshenen, 387 F.Supp.3d 634, 641–642 (W.D.N.C. May 6, 2019) (holding that a similar exclusion barred coverage for another DPPA suit); Hartford Cas. Ins. Co. v. Ted A. Greve & Associates, P.A., 2017 WL 5557669 (W.D.N.C. November 17, 2017) (holding that a similar exclusion barred coverage for another DPPA suit). In light of the unambiguous policy language, the underlying allegations, and the wealth of authority upholding the Exclusion, the Court agrees with Plaintiff and finds the Exclusion bars coverage here.

Instead of addressing the applicability of the Recording and Distribution of Material in Violation of Law Exclusion to the case at hand, Defendants appear to contend that that exclusion was deleted and replaced by the Endorsement. (Doc. No. 17, p. 14). However, review of the Endorsement does not support that contention. Indeed, the Endorsement does not indicate that it deleted and replaced the Exclusion. Rather it notes that the Exclusion is *added* to the policies. See, e.g., (Doc. 1-4, p. 107). Thus, the Endorsement supplements, not supplants, the Exclusion, and both the Endorsement and Exclusion exist in the Policies.

13

Defendants further contend that the Exclusion does not apply because it does not expressly use the word "use." (Doc. No. 17, p. 14). This argument is unpersuasive, as the Exclusion does use the words "dissemination," "sending," "communicating," or "distribution," which are all forms of "use" of material or information. (Doc. No. 1-4, p. 76). Lastly, Defendants argue that the Exclusion does not apply because it does not use the word "obtain." (Doc. No. 17, p. 14). Again, this argument is unavailing, because the mere obtainment of material or information would not be covered under the policies in the first place – such obtainment does not qualify as *publication* of material that violates the right of privacy. For the reasons set forth above, the Policies are clear and unambiguous, and the absence of the words "use" or "obtain" in the Exclusion are irrelevant to the analysis here. See Mizell, 530 S.E.2d at 95 ("[I]f the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written.").

### B. Duty to Indemnify

The Court now turns to the duty to indemnify under the Policies. Although it is well established that the duty to defend is broader than the duty to indemnify, such duties are distinct. See Westfield Ins. Co. v. Nautilus Ins. Co., 154 F. Supp. 3d 259, 271-71 (M.D.N.C. 2016). "North Carolina law dictates that an insurer's duty to indemnify cannot be determined until the conclusion of the case, if necessary facts remain in dispute." Great W. Cas. Co. v. Packaging Corp. of Am., 444 F. Supp. 3d 664, 674 (M.D.N.C. 2020) (citing Harleysville Mut. Ins. Co., 692 S.E.2d at 611); see also Peerless Ins. Co. v. Innovative Textiles, Inc., No. 1-19-CV-362, 2020 WL 137303, at *2-3 (M.D.N.C. Jan. 13, 2020) (quoting Am. Auto. Ins. Co. v. Jacobs, No. 1:11-cv-00332, 2013 WL 2632602, at *2 (W.D.N.C. June 11, 2013) ("a dispute regarding an insurer's duty to indemnify is not ripe for decision until the underlying issue of liability has been adjudicated.")). Here, the Hatch

14

suit is still pending on appeal in the Fourth Circuit, and therefore, any declaration as to indemnification is premature until there has been a resolution of the underlying claim. Am. Auto. Ins. Co. v. Jacobs, 2013 WL 2632602, at *2. Accordingly, the Court finds the issue of indemnification is not ripe and will dismiss the portion of Plaintiff's Complaint, (Doc. No. 1), which seeks a declaration related to indemnification without prejudice with leave to refile the action if the factual findings in the Hatch Suit suggest coverage is appropriate. See Great W. Cas. Co., 444 F. Supp. 3d at 674 (Finding the issue of indemnification was not sufficiently ripe and dismissing the case without prejudice); Am. Auto. Ins. Co. v. Jacobs, 2013 WL 2632602, at *2 (Same).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is GRANTED IN PART and DISMISSED IN PART. Plaintiff's Motion is Granted to the extent it seeks a declaration regarding the duty to defend under the Policies. Plaintiff's Motion is otherwise Dismissed, in that Plaintiff's claim for a declaration regarding its duty to indemnify is hereby DISMISSED WITHOUT PREJUDICE. Defendants' Motion for Summary Judgment, (Doc. No. 17), is DENIED.[8] The Parties' Joint Motion to Continue Docket Call/ Trial, (Doc. No. 21), is, therefore, DENIED AS MOOT.

The Court hereby DECLARES that Plaintiff does not owe a duty to defend Defendants in connection with the Hatch suit.

---

[8] The Court notes Defendants "urge[] this Court … to require [Plaintiff] to continue to defend Nagle in the [Hatch suit] as a matter of law and to grant Summary Judgment in Nagle's favor pursuant to the Court's authority under Fed. R. Civ. P. 56(f)" in their Response to Plaintiff's Motion for Summary Judgment; however, Defendants merely assert "[t]he duty to indemnify is not ripe" and fail to seek relief from the Court in accordance with its assertions. (Doc. No. 17, p. 21). Accordingly, the Court DENIES Defendants' "Motion" in whole.

15

The Clerk is respectfully directed to enter final judgment in accordance with this Order and CLOSE THIS CASE.

Signed: March 3, 2022

Frank D. Whitney
United States District Judge

16